UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

EDWARD McFERRIN, JR., #164253,

                    Petitioner,                              Case No. 13-cv-10309

v.                                                           Honorable Thomas L. Ludington

STEVEN RIVARD,

                    Respondent.

_____/

**OPINION AND ORDER DENYING AND DISMISSING WITH PREJUDICE PETITION
FOR A WRIT OF HABEAS CORPUS, DENYING CERTIFICATE OF
APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON
APPEAL**

Petitioner Edward McFerrin, Jr., presently confined at Kinross Correctional Facility in

Kincheloe, Michigan, has filed a *pro se* application for the writ of habeas corpus pursuant to 28

U.S.C. § 2254. Petitioner was convicted in 2008 of armed robbery, Mich. Comp. Laws §

750.529; carjacking, Mich. Comp. Laws § 750.529a; and assault with intent to do great bodily

harm less than murder, Mich. Comp. Laws § 750.84. Petitioner is serving concurrent sentences

of twenty-five to fifty years for his armed robbery and carjacking convictions and ten to twenty

years for his assault conviction.

Petitioner alleges (1) that certain evidence was improperly introduced at trial, the victim's

in-court identification of him was based on a suggestive pretrial incident, (2) that the trial court

sentenced him on the basis of inaccurate information, (3) that the trial court erred by imposing an

attorney fee as part of the sentence, and (4) that the trial court gave an erroneous jury instruction

on carjacking. Respondent Steven Rivard urges the Court to deny the petition on the grounds that

Petitioner procedurally defaulted his third claim and that the state courts' rejection of his other

claims was not contrary to, or an unreasonable application of, Supreme Court precedent. Petitioner's claims do not warrant habeas relief. The petition will be denied.

### I.

### A.

Petitioner was tried before a jury in St. Clair County Circuit Court on June 3, 4, and 10, 2008 on allegations that on April 15, 2006 he assaulted a taxicab driver with a knife, robbed the driver, and drove away in the taxicab without permission from the driver after the driver exited the vehicle.

### 1.

The prosecution began its case in chief by presenting evidence of a different robbery committed by Petitioner approximately one month after the robbery Petitioner was on trial for. Frank Lynch testified that on May 18, 2006, he was working as a cab driver for Port Huron Cab when he was dispatched to an address in Port Huron where Petitioner and a woman got into his cab. The couple wanted to go to the Super Kmart, but they asked Lynch to stop at a few houses on the way there. After making the stops, the couple asked Lynch to turn his car around and proceed in a different direction. Petitioner was seated behind Lynch. Petitioner put one arm around Lynch's neck and his other arm around Lynch's eyes. Lynch stepped on the brakes "real hard," and Petitioner flew forward. Lynch then bit Petitioner's hand. Petitioner loosened his grip and fell backward. The woman produced a knife, and Petitioner threatened to "get" Lynch, but Lynch got out of the car and slammed the back door on Petitioner's leg. He then ran to a house for help. As he looked back, he saw the couple get in the front seat of the cab and drive away. The police were called, and after they arrived, Lynch provided a description of the couple. Lynch identified Petitioner at trial as the man who assaulted him and drove away in his cab.

Sergeant Scott Van Sickle testified that, on May 18, 2006, he was a detective assigned to the case involving Frank Lynch. He interviewed Petitioner shortly after the incident on May 18, 2006, but Petitioner denied being involved in the attack on Mr. Lynch. In fact, Petitioner informed Sergeant Van Sickle that he had never been in a cab in Port Huron. Sergeant Van Sickle, however, was aware that the victim may have bit the suspect on the arm or hand, and when he was interviewing Petitioner, he noticed that Petitioner appeared to have a bite mark on his left hand. Furthermore, although Petitioner told Sergeant Van Sickle that his name was John Chapman, his fingerprints were taken to verify his identification, and the FBI informed the Port Huron police that same evening that Edward McFerrin was in their custody, not somebody named John Chapman.

The trial court instructed the jurors that testimony about the May 18, 2006 robbery of Frank Lynch was offered for the limited purpose of making the following determinations: whether Petitioner had a reason to commit the crime, whether he meant to take money out of the car, whether he acted purposefully, and whether the crime was part of a plan, scheme, or system. The court charged the jurors not to consider the testimony to determine whether Petitioner was a bad person, likely to commit a crime, or guilty of other bad conduct.

**2.**

Police Officer David Conley testified on direct examination about the April 15, 2006 crime. Officer Conley stated that, on that date, he was dispatched to a home where he met the homeowner and a cab driver named James Mallorey. He took a statement from Mallorey, who had injured his hand and was visibly shaken due to an assault and a carjacking involving his cab. The cab was later located by a citizens' group that assisted the police.

Officer Christopher Bean then testified that he assisted Officer Conley in investigating the April 15, 2006 cab theft. During the investigation, Officer Bean swabbed areas of the car that appeared to have blood.

**3.**

After Officer Bean testified, the prosecutor asked the trial court for permission to admit the redacted transcript of Petitioner's plea in from the May 18, 2006 robbery. The prosecutor explained that only Petitioner's admissions would be shown to the jury. Defense counsel objected to the evidence, but the trial court overruled the objection and permitted the prosecutor to admit the statement under Michigan Rule of Evidence 404(b).

**4.**

The prosecutor then introduced testimony concerning the cab stolen by McFerrin on the night in question and the evidence gathered that night from witnesses and from the cab.

Donald Swinson was the owner of the Port Huron Cab Company in 2006. He owned two cabs at the time. One of them was the 1996 Grand Marquis that was involved in the incident which occurred on April 15, 2006.

Don Hering testified that, between 1:30 and 2:00 a.m. on April 15, 2006, a man knocked on his door and said that he had been robbed and stabbed and that someone had taken his cab. The man's hand was bleeding. Hering called the police. An officer responded and interviewed Hering and the cab driver.

Detective David Seghi of the Port Huron Police Department was asked to follow up on the carjacking that occurred on April 15, 2006. He interviewed Petitioner and the victim, James Mallorey, and he took a swab of both men's inner cheeks for DNA analysis. During the interview with Petitioner, Petitioner informed him that he had never been in a cab in Port Huron.

- 4 -

Roger Wesch and Tom Ruedisueli testified about transporting DNA swabs taken from the vehicle, the victim, and Petitioner to the crime lab in Sterling Heights.

**5.**

Next, the victim, James Mallorey, testified that he was working as a cab driver on April 15, 2006, when he was asked to pick up an individual on Pine Street in Port Huron. The man was wearing a dark sweatshirt with a hood, and he walked in front of Mallorey's cab before getting into the rear passenger seat of his cab. As a matter of standard practice, Mallorey turned around and looked at the man's face. Because he was a little leery of the man, he kept looking in the rear view mirror as he was driving. He then saw a knife coming at him. He grabbed the knife and swung at the man as the man tried to put his arm around Mallorey's neck. He also jammed on the brakes and disconnected his seatbelt. The man then said something like, "I'm going to kill you and take your money." He offered the man his money if the man would let him out. The man took the money. Mallorey then got out of the cab, ran to a house, and pounded on the door until someone answered. Meanwhile, his passenger drove away in his cab.

Mallorey identified Petitioner at trial as the man who assaulted him and took his cab. Although he stated that he was never asked to view a line-up, he claimed that he saw Petitioner in the courthouse when he accompanied Frank Lynch to the preliminary examination in the Lynch case on March 25, 2008. Mallorey did not know that Petitioner would be present for the Lynch case.

After Mr. Mallorey testified, the prosecutor read into the record Petitioner's testimony at a September 11, 2006 court proceeding. During that proceeding, Petitioner admitted that, on May 18, 2006, he was a passenger in Frank Lynch's cab and that he grabbed Lynch around the neck and drove away in Lynch's cab after Lynch got out of the car. The trial court warned the jury that

the evidence was offered for the limited purpose of showing the absence of mistake or that Petitioner had a *modus operandi*, that is, a common plan, system, or scheme.

Officer David Conley resumed the witness stand and was cross examined by defense counsel. He stated that, when Mallorey provided him with a description of the assailant, Mallorey explained that he was unable to see the man's facial features because the hood of his sweatshirt surrounded his face.

**6.**

The prosecution then presented forensic evidence concerning the carjacking of James Mallorey's cab.

Forensic scientist Melinda Jackson of the Michigan State Police testified as an expert witness in serology. She testified that she was provided blood swabs from a door handle and from behind a steering wheel. She performed a chemical test which indicated the presence of blood in the swabs.

Lisa Christensen testified that she was a DNA Analyst with Bode Technology Group in Lorton, Virginia. According to her, Bode received three samples to analyze. She extracted DNA from the sample provided by James Mallorey in order to generate a DNA profile.

Julie Hutchison also was employed at Bode Technology Group, and she was the lead DNA analyst in the case. She testified that she analyzed the two unknown samples in the case and then gave the results of her tests and Lisa Christensen's tests to the Michigan State police.

Forensic scientist Heather Vitta testified as an expert in DNA analysis. She compared two samples of blood taken from the vehicle and known samples of DNA taken from James Mallorey and Petitioner. She claimed that Petitioner was the main contributor of DNA in one blood sample and that the likelihood someone else contributed the sample was one in 3.6 quintillion among

- 6 -

Caucasian people, 94.6 quadrillion among African American people, and 3.0 quintillion among Hispanic people. She concluded that Petitioner was the one person who matched the DNA profile in the blood taken from the steering wheel of the vehicle.

**7.**

Detective David Seghi was recalled as a prosecution witness and testified that a booking photograph taken of Petitioner on May 19, 2006, following the incident with Frank Lynch, fairly depicted how Petitioner looked at the time of the May 18, 2006 incident. Detective Seghi admitted that he did not know whether Petitioner looked the same way on April 15, 2006, the date of the Mallorey carjacking.

**8.**

Petitioner's mother was the only defense witness. She testified that a family photograph taken in April of 2006 depicted how Petitioner appeared at the time and that he had short hair then.[1] Defense counsel argued to the jurors that they should find Petitioner not guilty of all three crimes because the prosecution failed to prove beyond a reasonable doubt that Petitioner committed the crimes.

**9.**

On June 10, 2008, the jury found Petitioner guilty, as charged, of armed robbery, Mich. Comp. Laws § 750.529; carjacking, Mich. Comp. Laws § 750.529a; and assault with intent to do great bodily harm less than murder, Mich. Comp. Laws § 750.84. On July 7, 2008, the trial court sentenced Petitioner as a habitual offender to concurrent terms of twenty-five to fifty years for the robbery and carjacking and ten to twenty years for the assault.

**B.**

---

[1] James Mallorey previously testified that Petitioner "had a bushy fro" under the hoodie he was wearing on the night of the crime.

On direct appeal from his convictions, Petitioner argued that evidence of the May 18, 2006 Lynch robbery was improperly introduced at his trial under Michigan Rule of Evidence 404(b). He also claimed that the victim's in-court identification of him was based on a suggestive pretrial incident, that the trial court sentenced him on the basis of inaccurate information, and that the trial court erred by imposing an attorney fee. The Michigan Court of Appeals found no merit in Petitioner's claims and affirmed his convictions and sentence. *See People v. McFerrin*, No. 286968, 2009 WL 5194476 (Mich. Ct. App. Dec. 15, 2009). Petitioner raised the same issues in the Michigan Supreme Court, which denied leave to appeal on May 25, 2010, because it was not persuaded to review the issues. *See People v. McFerrin*, 781 N.W.2d 820 (Mich. 2010) (table).

On May 19, 2011, Petitioner filed a motion for relief from judgment in which he argued that the trial court gave an erroneous jury instruction on carjacking, that trial counsel was ineffective for failing to object to the instruction, and that appellate counsel was ineffective for failing to raise the issue on appeal. The trial court disagreed with Petitioner and denied his motion in a reasoned opinion. *See* Order Denying Def.'s Mot. for Relief from J., No. K-08-000805-FC (St. Clair County Cir. Ct. June 16, 2011). Petitioner moved for reconsideration, but the trial court denied his motion on grounds that Petitioner was raising the same issues that the court had already addressed and that he had failed to demonstrate a palpable error by which the court or the parties were misled. *See* Ruling Denying Def't Mot. for Reconsideration, No. K-08-000805-FC (St. Clair County Cir. Ct. Oct. 17, 2011).

Petitioner appealed the trial court's decision on his motion for relief from judgment without success. The Michigan Court of Appeals denied leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D). *See People v. McFerrin*, No. 307170

- 8 -

(Mich. Ct. App. May 21, 2012).  On November 20, 2012, the Michigan Supreme Court denied leave to appeal for the same reason. *People v. McFerrin*, 822 N.W.2d 579 (Mich. 2012) (table).

## C.

On January 24, 2013, Petitioner filed his habeas corpus petition. He alleges that: (1) evidence introduced at trial under Michigan Rule of Evidence 404(b) was not admitted for a proper purpose; (2) the victim's in-court identification of him was based on an unfairly suggestive pretrial incident; (3) the trial court sentenced him on the basis of inaccurate information; (4) the imposition of an attorney fee was legal error; and (5) the trial court gave an erroneous jury instruction on carjacking, trial counsel was ineffective for failing to object, and appellate counsel was ineffective for failing to raise the issue on appeal. Respondent argues in his answer to the petition that Petitioner procedurally defaulted his third claim and that the state courts' rejection of his other claims did not result in decisions that were contrary to federal law, unreasonable applications of federal law, or unreasonable determinations of the facts.

## II.

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97 (2011). Pursuant to § 2254, the court may not grant a state prisoner's application for the writ of habeas corpus unless the state court's adjudication of the prisoner's claims on the merits

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

- 9 -

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion of the Court for Part II).

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)." *Renico v. Lett*, 559 U.S. 766, 773 (2010).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his claims "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103.

### III.

### A.

Petitioner alleges that "other acts" evidence introduced at his trial under Michigan Rule of Evidence 404(b) was not admitted for a proper purpose. The disputed evidence consisted of

- 10 -

(1) Frank Lynch's testimony that Petitioner assaulted him and took his cab in a similar incident on May 18, 2006, and (2) a redacted transcript of Petitioner's guilty plea to the charges brought against him for the incident involving Mr. Lynch. Petitioner claims that, even if the May 18, 2006, incident was relevant at his jury trial involving James Mallorey, the evidence was unduly prejudicial and should have been excluded.

**1.**

In a pretrial motion argued on May 27, 2008, Petitioner tried to suppress evidence of the Lynch carjacking, but the trial court ruled that the evidence was admissible to show intent to take property and to attack the victim. The trial court noted that, in both cases (the April 15, 2006, incident involving James Mallory and the May 18, 2006, incident involving Frank Lynch), the victims were cab drivers who were held down by the suspect, and in both situations, the suspect asked the victim to drive to a number of locations, attacked the victim from behind by grabbing the victim around the neck, used force and violence, and took the vehicle without permission. The trial court concluded from these similarities that the evidence met the criteria for admission under Michigan Rule of Evidence 404(b). The trial court then denied the motion to suppress the "other acts" evidence after concluding that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice given the facts in this case. Mot. Hr'g, 12-13, May 27, 2008.

The issue arose again at trial after Frank Lynch testified. As noted above, the trial court instructed the jury on the proper use of Lynch's testimony. Trial Tr. II, 6-8, June 4, 2005.

The issue arose still another time when the prosecutor moved to admit the redacted transcript of Petitioner's plea in the case involving Mr. Lynch. The prosecutor stated that she had removed the word "plea" from the face sheet and deleted everything but Petitioner's factual

admissions. The trial court reaffirmed its previous ruling that the evidence was admissible, but the court gave another cautionary jury instruction. The prosecutor then read into the record Petitioner's admissions during the plea proceeding in the Lynch case. Petitioner indicated at his plea in that case that he was a passenger in Mr. Lynch's cab on May 18, 2006, that he grabbed Mr. Lynch around the neck, and that he drove away in Mr. Lynch's car after Lynch got out of the cab and ran down the street. *Id.* at 89-91.

Petitioner reasserted his claim on direct appeal. The Michigan Court of Appeals determined that the evidence was relevant because the prosecutor had to prove intent, and intent was a proper purpose for admitting evidence of other crimes, wrongs, or acts under Michigan Rule of Evidence 404(b)(1). The Court of Appeals noted that Petitioner's intent to rob and harm Mr. Mallorey "was made more probable by his admission to having a similar intent in a markedly similar crime." *McFerrin*, 2009 WL 5194476, at *1. The Court of Appeals concluded that, "[o]n balance, it cannot be said that the trial court abused its discretion in determining that the evidence was not substantially more prejudicial than probative." *Id.*

## 2.

There is no merit in Petitioner's claim that "other acts" evidence was improperly introduced at his trial under Michigan Rule of Evidence 404(b), because the alleged violation of the Michigan Rules of Evidence is not a cognizable claim on federal habeas corpus review. *Hall v. Vasbinder*, 563 F.3d 222, 239 (6th Cir. 2009). "[A] federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

In addition, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts

- 12 -

evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Consequently, "there is no Supreme Court precedent that the trial court's decision could be deemed 'contrary to' under AEDPA." *Id.* at 513. Alleged errors in a state court's evidentiary ruling can warrant habeas corpus relief only if the error was so fundamentally unfair as to rise to the level of a due-process violation. *Moreland v. Bradshaw*, 699 F.3d 908, 923 (6th Cir. 2012), *cert. denied*, 134 S. Ct. 110 (2013). But "courts 'have defined the category of infractions that violate "fundamental fairness" very narrowly.'" *Wright v. Dallman*, 999 F.2d 174, 178 (6th Cir. 1993) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)). And here, the disputed evidence was admitted to show intent, purpose, and a scheme, plan, or way of doing an act. This is a proper purpose under Michigan Rule of Evidence 404(b), which reads:

> **(b) Other crimes, wrongs, or acts.**
>
> (1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

Mich. R. Evid. 404(b).

The trial court, moreover, instructed the jurors more than once that, if they believed Petitioner committed a crime for which he was not on trial, they could consider the evidence for the limited purposes of deciding: whether the evidence tended to show that Petitioner had a reason to commit the crime or that he specifically intended to take the victim's money and/or car; whether he acted purposefully, that is, not by accident or mistake, or because he misjudged the situation; whether he used a plan, system, or characteristic scheme that he had used before or since; and whether he committed the charged crime. The trial court warned the jurors not to

consider the evidence for any other purpose and not to decide if it showed Petitioner was a bad person or likely to commit crimes. The court also warned the jurors not to convict Petitioner because they thought he was guilty of other bad conduct. (Trial Tr. Vol. II, 6-8, 89, June 4, 2008; Trial Tr. Vol. III, 84-85, June 10, 2008.)

Any possible error, if cognizable, did not rise to the level of a due-process violation. Petitioner's first claim does not warrant relief.

## B.

Second, Petitioner alleges that Mr. Mallorey's identification of him at trial was based on Mallorey's observation of him at the preliminary examination in the case involving Frank Lynch. Petitioner asserts that the preliminary examination in the Lynch case was an unfairly suggestive incident and, therefore, the trial court should have granted his pretrial motion to suppress the identification of him at trial.

Petitioner raised this issue on direct appeal, where the Michigan Court of Appeals concluded that the pretrial identification was not unduly suggestive. The Court of Appeals stated that, although some factors might have weighed in favor of finding that the in-court identification was based on an unduly suggestive pretrial identification, the victim had an ample opportunity to observe Petitioner, his description of Petitioner was accurate and consistent, and there was no previous misidentification.

## 1.

A pretrial confrontation violates due process of law if the confrontation was "'unnecessarily suggestive and conductive to irreparable mistaken identification.'" *Neil v. Biggers*, 409 U.S. 188, 196 (1972) (quoting *Stovall v. Denno*, 388 U.S. 293, 301-02 (1967)). "Suggestive confrontations are disapproved because they increase the likelihood of

misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous." *Id.* at 198.

The Due Process Clause, however, "does not require a preliminary judicial inquiry into the reliability of an eyewitness identification when the identification was not procured under unnecessarily suggestive circumstances *arranged by law enforcement.*" *Perry v. New Hampshire*, 132 S. Ct. 716, 730 (2012) (emphasis added); *see also Howard v. Bouchard*, 405 F.3d 459, 469-70 (6th Cir. 2005) (stating that "[u]nnecessary suggestiveness generally depends 'upon whether the witness's attention was directed to a suspect *because of police conduct*'") (quoting 2-5 Crim. Con. Law § 5.05(2)(b) (2004)) (emphasis added). Improper police action is a prerequisite to judicial checks on the reliability of an identification because "[a] primary aim of excluding identification evidence obtained under unnecessarily suggestive circumstances . . . is to deter law enforcement use of improper lineups, showups, and photo arrays . . . ." *Perry*, 132 S. Ct. at 726.

Mr. Mallorey testified at Petitioner's trial that he saw Petitioner at Petitioner's preliminary examination on March 25, 2008 in the case involving Frank Lynch. Mr. Mallorey stated that he was sitting in the courtroom when Petitioner entered with some other people. Mallorey claimed that he was not paying attention at the time, but when he looked at Petitioner, he realized that Petitioner was the man who had attacked him in the cab. Mr. Mallorey went on to say that he (Mallorey) was there to accompany a friend (Mr. Lynch) and that he did not know at the time that Petitioner was in court for Mr. Lynch's case. Nor did he expect to see Petitioner there. Trial Tr. Vol. II, 82-83, June 4, 2008. Mr. Mallorey's identification of Petitioner at the preliminary examination in Mr. Lynch's case was a spontaneous identification. And because the identification was not induced by improper conduct by law enforcement officials, the trial court

- 15 -

did not err in denying Petitioner's motion to suppress Mr. Mallorey's identification of Petitioner at trial.

## 2.

Even assuming that the Due Process Clause were implicated and the pretrial identification procedure was suggestive, the question becomes whether, under the totality of the circumstances, the identification was reliable despite a suggestive confrontation procedure. *Biggers*, 409 U.S. at 199.

> [T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Id*. at 199-200.

Although the length of time between the crime and the confrontation was two years (April 15, 2006 to March 25, 2008), *McFerrin*, 2009 WL 5194476, at *2, "the length of time between the crime and the confrontation . . . may be outweighed by other indicia of reliability." *United States v. Wong*, 40 F.3d 1347, 1360 (2d Cir. 1994). Mr. Mallorey had a good opportunity to view the suspect at the time of the crime. He claimed that, before Petitioner got in his cab, Petitioner walked in front of the cab while his headlights were on and that he could see Petitioner "really well." Trial Tr. II, 58, June 4, 2008. Then, after Petitioner entered his cab, he turned and looked Petitioner in the face under the dome light. *Id*. at 59-60.

Mr. Mallorey stated that Petitioner's "hoodie" automatically caught his attention. And because he was a little leery of Petitioner, he watched Petitioner in the rear view mirror. *Id*. at 58, 60. He also unbuckled his seat belt because Petitioner was fidgeting in the backseat and that raised his suspicions. *Id*. at 77.

According to the trial court, Mr. Mallorey's description of the suspect at the time of the crime was accurate, Mot. Hr'g, 8-9, May 27, 2008, and Petitioner has not alleged that he did not fit Mallorey's description of him. As for certainty of the identification, Mr. Mallorey testified that, when he saw Petitioner during the pretrial confrontation, he sought out Detective Seghi to tell him about his observation of Petitioner. Trial Tr. II, 82, June 4, 2008. This is an indication that Mallorey was certain of his pretrial identification of Petitioner.

To summarize, the length of the time between the crime and the confrontation was substantial, but it was outweighed by the other factors. Mr. Mallory had a good opportunity to view the suspect at the time of the crime, his attention was good, his description of the suspect was accurate, and he was sure of his identification of Petitioner. Therefore, even if the pretrial identification was unfair, there was an independent basis for Mr. Mallorey's identification of Petitioner.

It is also noteworthy that DNA evidence in a blood swab established Petitioner's presence in Mr. Mallorey's cab, despite his claim that he was never inside a Port Huron cab. Consequently, any constitutional error in admitting Mr. Mallorey's in-court identification of Petitioner, could not have had a "substantial and injurious effect or influence" on the jury's verdict and was harmless. *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). Petitioner therefore is not entitled to relief on the basis of his second claim.

## C.

Petitioner alleges that the trial court sentenced him on the basis of inaccurate information when the court stated to him at sentencing, "I believe that you're a threat to this community and that if you're released from prison in the near future you will kill." Sentencing Tr., 16, July 7,

- 17 -

2008. Petitioner contends that this comment is mere speculation and conjecture and not supported by the evidence.

## 1.

The Michigan Court of Appeals addressed and rejected Petitioner's claim on direct review. The Court of Appeals concluded in the alternative that relief was foreclosed because Petitioner did not raise the issue at sentencing, in a proper motion for resentencing, or in a proper motion to remand. Accordingly, Respondent argues on the basis of the state court's alternative ruling that Petitioner's claim is procedurally defaulted.

A procedural default, however, is not a jurisdictional matter, *Trest v. Cain*, 522 U.S. 87, 89 (1997), and, in certain cases, a determination of whether Petitioner's claim is procedurally defaulted "adds nothing but complexity to the case." *Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010). This is such a case and accordingly, the merits of Petitioner's claim will be addressed.

## 2.

The Supreme Court has stated that a sentence must not be founded on "misinformation of constitutional magnitude," *United States v. Tucker*, 404 U.S. 443, 447 (1972), or on "extensively and materially false" information that the defendant had no opportunity to correct through counsel, *Townsend v. Burke*, 334 U.S. 736, 741 (1948). In this case, however, Petitioner threatened to kill Mr. Mallorey and take his money. Trial Tr. II, 62, June 4, 2008. Furthermore, as the Michigan Court of Appeals emphasized, it appears that the real basis for the trial judge's focus in levying Petitioner's sentence was Petitioner's criminal background and history of substance abuse. Petitioner's criminal history included ten prior felony convictions, five prior prison terms, and two adult felony probation terms. His substance abuse began at the age of

fifteen and, according to the trial court, substance abuse was what motivated Petitioner to commit the offenses in this case. Sentencing Tr. 16, July 7, 2008.

Given Petitioner's criminal background, history of substance abuse, and threat to kill the victim in this case, it was not mere speculation or conjecture to say that Petitioner was a threat to the community and that he might kill someone in the future if he were released from prison. The sentence was not founded on misinformation of constitutional magnitude or on extensively and materially false information which Petitioner had no opportunity to correct. Petitioner therefore has no right to relief on the basis of his challenge to the trial court's comment at sentencing.

**D.**

Petitioner next asserts that the trial court erroneously ordered him to pay $3,154.92 in attorney fees as part of his sentence. Petitioner contends that this was legal error because the court imposed the fees without any discussion and without inquiring into his current or future ability to pay the fine.

The Michigan Court of Appeals rejected this claim as premature when Petitioner raised the claim on direct appeal. The Court of Appeals noted that, under *People v. Jackson*, 769 N.W.2d 630 (2009), "an investigation of a defendant's ability to pay is not required at the time it is imposed, but is required when enforcement of the order is sought." *McFerrin,* 2009 WL 5194476, at *3.

Petitioner's claim is meritless because habeas petitioners are entitled to relief only if they are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §§ 2241(c)(3) and 2254(a). "A monetary fine is not a sufficient restraint on liberty to meet the 'in custody' requirement" for habeas petitioners. *United States v. Michaud*, 901 F.2d 5, 7, (1st Cir. 1990) (ruling on a motion brought under 28 U.S.C. § 2255, but noting that "the 'in

- 19 -

custody' requirement of an actual restraint on liberty applies equally to proceedings under § 2254 and § 2255"). Therefore, Petitioner is precluded from challenging the imposition of attorney fees. *See United States v. Watroba*, 56 F.3d 28, 29 (6th Cir. 1995) (concluding that the petitioner was precluded from challenging the imposition of costs in a § 2255 petition because § 2255 is limited to prisoners who claim a right to be released from custody); *see also Michaels v. Hackel*, 491 F. App'x 670, 671 (6th Cir. 2012) (rejecting the argument that a fine imposed by the state court was sufficient to render the petitioners in custody for purposes of district court jurisdiction in a habeas case brought under § 2254).

### E.

In his fifth and final claim, Petitioner alleges that the trial court deprived him of a fair trial by reading an erroneous jury instruction on carjacking. Petitioner also contends that his trial attorney was ineffective for failing to object to the instruction, and that appellate counsel was ineffective for failing to raise the issue on appeal. Petitioner first raised this issue in his motion for relief from judgment, which the trial court denied after concluding that its jury instruction was not erroneous and that Petitioner had failed to show he received ineffective assistance of counsel.

### 1.

"[N]ot every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004). The only question on habeas review of a jury instruction "is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.' " *McGuire*, 502 U.S. at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). "To warrant habeas relief, 'jury instructions must not only have been erroneous, but also, taken as a whole, so infirm that they rendered the entire

trial fundamentally unfair.'" *Buell v. Mitchell*, 274 F.3d 337, 355 (6th Cir. 2001) (quoting *Scott*

*v. Mitchell*, 209 F.3d 854, 882 (6th Cir. 2000)).

To prevail on a claim of ineffective assistance of counsel, a defendant must show that

"counsel's performance was deficient" and "that the deficient performance prejudiced the

defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

> "Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*,
> 559 U.S. 356, 371, 130 S. Ct. 1473, 1485, 176 L. Ed. 2d 284 (2010) . . . . The
> question is whether an attorney's representation amounted to incompetence under
> "prevailing professional norms," not whether it deviated from best practices or
> most common custom. *Strickland*, 466 U.S., at 690, 104 S. Ct. 2052.

*Harrington*, 562 U.S. at 105.

## 2.

In the trial court's charge to the jury, the court gave the following jury instruction on

carjacking:

> [I]n Count 2, the defendant is charged with the offense of carjacking. To prove
> this charge, the prosecutor must prove each of the following elements beyond a
> reasonable doubt:
>
> First, that the defendant used force or violence against and/or assaulted and/or put
> in fear James Mallorey.
>
> Second, that the defendant did so while he was in the course of committing a
> larceny of a motor vehicle. A larceny is the taking and movement of someone
> else's motor vehicle with the intent to take it away from that person permanently.
>
> In the course of committing a larceny of a motor vehicle includes acts that occur
> in an attempt to commit the larceny, or during the commission of the larceny, or
> in flight or attempted flight after the commission of the larceny, or in an attempt
> to retain possession of the motor vehicle.
>
> Third, James Mallorey was the operator of the motor vehicle.

Trial Tr. Vol. III, 88-89, June 10, 2008.

During the jurors' deliberations, they sent a note to the trial court requesting clarification of the word "permanently" as used in the second element of carjacking. The trial court responded to the jurors by giving the following supplemental instruction:

> Now, I have the clarification that's been requested to the definition for permanently depriving a person of property as contained in the carjacking instruction. It doesn't reasonably lend itself to much beyond the normal meaning for that word. There is nothing in the statute, there is nothing in the rules or the standard jury instruction that gives me a definition that I am suppose[d] to state here.
>
> There are concepts I believe that should be fairly obvious, but it's in the normal course of what the word should mean. Larceny is when you're taking property or removing it from someone else, in this case a motor vehicle, and it's with the intent to take it away form that person personally. You're taking away property. I really can't add anything to that. You have got words with that. Unfortunately, that may leave you somewhat puzzled and I apologize, but that's the way the law is written.

*Id*. at 96-97.

> Petitioner claims that the trial court should have read the following use note:
>
> If the issue is contested, the court may find it useful to expand upon the definition of "take it away from that person permanently" by explaining that it means the defendant must have intended to
>
> (a) withhold property or cause it to be withheld from a person permanently, or for such a long time that the person loses a significant part of its value, use, or benefit; or
>
> (b) dispose of the property in such a way that it is unlikely that the owner will get it back; or
>
> (c) keep the property with the intent to give it back only if the owner buys or leases it back, or pays a reward for it; or
>
> (d) sell give, promise, or transfer any interest in the property; or
>
> (e) make the property subject to the claim of a person other than the owner.
>
> The court may select the factually appropriate paragraph(s) from these options.

Mich. Crim. Jury Instructions 2d 18.1, use note 3.

Petitioner also points out that the trial court substituted the word "personally" for the word "permanently" when it re-read the definition of larceny in its supplemental instruction. The court said, "Larceny is when you're taking property or removing it from someone else, in this case a motor vehicle, and it's with the intent to take it away from that person *personally*." Trial Tr. III, 97, June 10, 2010 (emphasis added). Petitioner asserts that, in failing to properly explain the law, the trial court deprived him of his constitutional right to a fair trial.

Habeas relief, however, is available only where the jury instructions were so infirm as to render the entire trial fundamentally unfair, *Buell*, 274 F.3d at 355, and Petitioner's burden is "especially heavy because no erroneous instruction was given." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). His claim is based on the failure to provide an additional explanation of a phrase in the standard jury instruction. "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Id*. Furthermore, in giving the supplemental instruction, the trial court encouraged the jurors to give the word "permanently" the normal and obvious meaning for that word.

The trial court could have improved the jury instruction on carjacking by reading use note 3 of Mich. Crim. Jury Instructions 2d 18.1, but the supplemental instruction that the court read to the jury was not so defective as to deprive Petitioner of a fair trial. The Court therefore declines to grant relief on Petitioner's challenge to the supplemental jury instruction. And because the jury instruction was not fundamentally unfair, defense counsel was not ineffective for failing to object to the instruction and appellate counsel was not ineffective for failing to raise the issue on direct appeal. "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir.), *cert. denied sub nom Coley v. Robinson*, 134 S. Ct. 513 (2013).

- 23 -

**IV.**

The state courts' rejection of Petitioner's claims did not result in decisions that were contrary to Supreme Court precedent, unreasonable applications of Supreme Court precedent, or unreasonable determinations of the facts. The state-court decisions certainly were not "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

**V.**

The petition for a writ of habeas corpus will be denied. Petitioner will also be denied a certificate of appealability. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id*. at 484. A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002).

For the reasons stated in this opinion, the Court will deny Petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *Dell v. Straub*, 194 F. Supp. 2d 629, 659 (E.D. Mich. 2002). Because McFerrin has not made a substantial showing of the denial of a constitutional right he is not entitled to the issuance of a certificate of appealability on this claim. *See Heidelberg v. Illinois*

- 24 -

*Prisoner Review Bd.*, 163 F.3d 1025, 1025-1027 (7th Cir. 1998). The Court will also deny

Petitioner leave to proceed *in forma pauperis* on appeal because the appeal would be frivolous.

28 U.S.C. § 1915(a)(3).

**VI.**

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**

**and DISMISSED with prejudice**.

It is further **ORDERED** that a certificate of appealability is **DENIED**.

It is further **ORDERED** that leave to proceed *in forma pauperis* on appeal is **DENIED**.

Dated: November 23, 2015                              s/Thomas L. Ludington
                                                     THOMAS L. LUDINGTON
                                                     United States District Judge

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served
upon each attorney or party of record herein by electronic means or first
class U.S. mail on November 23, 2015.

                              s/Michael A. Sian
                              MICHAEL A. SIAN, Case Manager

---